[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 250.]

KOCH, APPELLANT, *v*. RIST, APPELLEE.

[Cite as *Koch v. Rist*, 2000-Ohio-149.]

*Civil procedure—Alternate juror dismissed at conclusion of trial accompanies jury into jury room during deliberations and remains there until jury reaches verdict—Trial court does not abuse its discretion when ordering a new trial based on juror misconduct.*

(No. 99-504—Submitted January 25, 2000—Decided July 12, 2000.)

APPEAL from the Court of Appeals for Erie County, No. E-97-049.

————————————

{¶ 1} Appellant, Kelly Koch, filed suit against appellee, Douglas C. Rist, M.D., for medical malpractice. At the conclusion of the trial, the only alternate juror, Fred Brownell, was dismissed. Nevertheless, Brownell accompanied the jury into the jury room during deliberations and remained there until the jury reached its verdict.

{¶ 2} Upon learning of Brownell's presence in the deliberation room, counsel for Rist suggested that the court question the jury about Brownell's specific "participation, conversation, deliberations, and actions." The trial judge declined to do so. However, he did question Brownell about why he had entered the jury room. Brownell responded that he did not think it mattered.

{¶ 3} At that point, the judge determined that he would read the verdict and then poll the jury. The verdict was read in favor of Rist. The eight members of the jury were polled and each affirmed that the verdict was his or her own.

{¶ 4} The judge then questioned Brownell about the effect of his presence on the jury. Although Brownell stated that he had contributed nothing to the jury's

verdict, the judge responded that his presence had compromised the jury and ordered a new trial.

{¶ 5} The court of appeals reversed, finding that the trial court had abused its discretion by granting a mistrial and reinstated the jury verdict in favor of Rist.

{¶ 6} The cause is now before this court pursuant to the allowance of a discretionary appeal.

_____

*Rubenstein, Novak, Einbund & Pavlik, L.L.P., William J. Novak, Thomas D. Robenalt* and *Susan E. Yarb,* for appellant.

*Eastman & Smith, Ltd.,* and *John D. Willey, Jr.,* for appellee.

_____

**PFEIFER, J.**

{¶ 7} This case requires us to determine whether the trial court abused its discretion when it ordered a new trial based on juror misconduct because a dismissed alternate juror sat in on jury deliberations. For the reasons that follow, we conclude that the trial court did not abuse its discretion.

{¶ 8} A trial court may grant a new trial for various specified reasons, including an "[i]rregularity in the proceedings of the court, jury, magistrate, or prevailing party." Civ.R. 59(A)(1). Even absent one of the grounds specified, a trial court may grant a new trial "in the sound discretion of the court for good cause shown." Civ.R. 59(A)(9).

{¶ 9} There is a rule of long standing in Ohio that a trial court ought not to "reverse a judgment because of the misconduct of a juror unless prejudice to the complaining party is shown." *State v. Hipkins* (1982), 69 Ohio St.2d 80, 83, 23 O.O.3d 123, 125, 430 N.E.2d 943, 946. See *Armleder v. Lieberman* (1877), 33 Ohio St. 77, 1877 WL 165, paragraph one of the syllabus. We have applied this rule to a number of cases involving ordinary juror misconduct. *State v. Sheppard* (1998), 84 Ohio St.3d 230, 233, 703 N.E.2d 286, 290 (juror asked question of

2

psychologist friend before beginning of deliberations); *State v. Keith* (1997), 79 Ohio St.3d 514, 527, 684 N.E.2d 47, 60-61 (juror discussed the jury process with non-jurors during trial); *State v. Grant* (1993), 67 Ohio St.3d 465, 480, 620 N.E.2d 50, 67 (juror asked a testifying detective "how he was feeling"); *Hipkins*, 69 Ohio St.2d at 83, 23 O.O.3d at 125, 430 N.E.2d at 945-946 (juror had brief conversation with witness). However, the case before us involves extraordinary misconduct where a stranger to the jury entered the jury room and remained there throughout the entire deliberative process.

{¶ 10} Since this is a case of first instance in our state, we have reviewed several similar cases adjudicated in other states. One court has held that allowing alternate jurors to be present during jury deliberations for ten minutes is enough to taint a jury. *Commonwealth v. Krick* (1949), 164 Pa.Super. 516, 520-521, 67 A.2d 746, 749. Another court stated that alternate jurors "really are not jurors. When they attend jury deliberations they do so as mere strangers." *Commonwealth v. Smith* (1988), 403 Mass. 489, 494, 531 N.E.2d 556, 559. See *Brigman v. State* (Okla.Crim.App.1960), 350 P.2d 321, 323. Still another court has stated that "any time an alternate juror is in the jury room during deliberations he participates by his presence, and whether he says little or nothing, his presence will void the trial." *State v. Bindyke* (1975), 288 N.C. 608, 627-628, 220 S.E.2d 521, 533. Finally, several courts have written of the difficulty and dangers of inquiring into the prejudicial effect of an alternate juror's presence in jury deliberations. *United States v. Beasley* (C.A.10, 1972), 464 F.2d 468, 470 (inquiry itself is dangerous intrusion into the proceeding of the jury); *United States v. Virginia Erection Corp.* (C.A.4, 1964), 335 F.2d 868, 871-872; *State v. Cuzick* (1975), 85 Wash.2d 146, 150, 530 P.2d 288, 290; *Bindyke; Krick*.

{¶ 11} Were any of these factors the sole factor for the trial court to consider, it might have arrived at a different decision. However, the trial court was not confronted with a lengthy intrusion, or a stranger to the jury, or possible non-

verbal communication, or the difficulty of determining prejudice. The trial court was confronted with all four.

{¶ 12} The trial court was also aware of this court's concern about the sanctity of jury deliberations. We recently stated, " 'Courts face a delicate and complex task whenever they undertake to investigate reports of juror misconduct or bias during the course of a trial. This undertaking is particularly sensitive where, as here, the court endeavors to investigate allegations of juror misconduct during deliberations. As a general rule, no one—including the judge presiding at trial— has a "right to know" how a jury, or any individual juror, has deliberated or how a decision was reached by a jury or juror.' " *State v. Robb* (2000), 88 Ohio St.3d 59, 81, 723 N.E.2d 1019, 1044, quoting *United States v. Thomas* (C.A.2, 1997), 116 F.3d 606, 618. See *Virginia Erection Corp.*, 335 F.2d at 872 ("presence of the alternate in the jury room violated the cardinal principle that the deliberations of the jury shall remain private and secret in every case").

{¶ 13} Brownell's improper presence likely was innocent and his influence may have been negligible. However, given its duration, his status as a non-juror, the possibility if not likelihood of non-verbal communication, and the difficulty of determining whether he prejudiced the jury, we cannot say that the trial court was wrong to grant a mistrial. To do so, we would have to find an abuse of discretion, which connotes an attitude by the court that is arbitrary, unreasonable, or unconscionable. *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308. Our review of the record reveals nothing of the sort.

{¶ 14} Our opinion does not abrogate the long-standing rule that juror misconduct should not be the cause of a reversal absent prejudice. Neither does it create a presumption of prejudice whenever an outsider invades the sanctity of jury deliberations. But, see, *Bindyke*, 220 S.E.2d at 531 (majority view is that the presence of an outsider during deliberations requires declaration of mistrial). Instead, we will continue to rely upon the sound discretion of our trial judges.

When confronted with extraordinary circumstances, a trial court must be allowed to consider all of the pertinent circumstances in arriving at a decision. Given the circumstances in this case, the trial court did not abuse its discretion by granting a new trial.

{¶ 15} Accordingly, the judgment of the court of appeals is reversed, and the cause is remanded to the trial court for a new trial.

*Judgement reversed*
*and cause remanded.*

MOYER, C.J., DOUGLAS, FAIN and F.E. SWEENEY, JJ., concur.

MOYER, C.J., and DOUGLAS, J., concur separately.

FAIN, J., concurs separately.

COOK and LUNDBERG STRATTON, JJ., dissent.

MIKE FAIN, J., of the Second Appellate District, sitting for RESNICK, J.

———————————

**DOUGLAS, J., concurring.**

{¶ 16} I concur in the well-reasoned opinion and judgment of the majority. While the majority's discussion of cases from other jurisdictions is both interesting and useful, I would answer the primary question before us by referring to Civ.R. 47(C). Civ.R. 47(C) states, in part, that "[a]n alternate juror who does not replace a regular juror *shall* be discharged after the jury retires to consider its verdict." (Emphasis added.) The "juror" in question herein was, having been discharged, no longer a juror. Thus, attendance in the room where the jury was deliberating was improper, and even without proof of anything else, the mere presence of a nonjuror was cause to grant a mistrial. The trial judge was clearly correct and, I would submit, under a duty to act, given the clear violation of the rule.

MOYER, C.J., concurs in the foregoing concurring opinion.

———————————

**FAIN, J., concurring.**

5

{¶ 17} I concur in Justice Pfeifer's opinion for the court, but I write separately to elaborate upon my reasoning. In my view, the trial judge did not abuse his discretion by declaring a mistrial, especially because that action by the trial court was invited by counsel for both parties, who indicated, before the verdict was known, that the unusual circumstance of the alternate juror having sat in the jury room throughout deliberations "place[d] a question mark" on "the validity of the verdict," as counsel for Rist, the party who prevailed in the verdict, put it. Although Rist's counsel thereafter sought to have the trial judge question the regular jurors concerning the alternate juror's role during deliberations, the trial judge was well within his discretion in rejecting this proposal, since that would have infringed upon the privacy of the jury's deliberative process.

{¶ 18} Although I concur that the trial judge was within his discretion in declaring the mistrial, especially in view of the implicit invitation to do so by counsel for both parties, who indicated that the alternate juror's presence during deliberations had tainted the verdict, I am of the opinion that the trial judge would also have been well within his discretion had he decided not to declare a mistrial. In this I am guided by this court's opinion[1] in *Armleder v. Lieberman* (1877), 33 Ohio St. 77, which analyzed a comparable situation with reasoning remarkably applicable one hundred twenty-three years later. While a jury was deliberating, a "dangerous" fire broke out less than one hundred fifty feet from the jury room. The jurors, along with other courthouse denizens, exited the courthouse in some haste. While outside, one of the jurors spoke with an attorney, who was apparently not involved with the case in which the juror was deliberating, concerning the difficulty of deciding the case without access to certain books and papers. The attorney may have indicated that the jury might ask the court for the documents. The trial judge's

---

1. Technically, *Armleder* was an opinion of the Supreme Court *Commission* of Ohio, rather than of the Supreme Court, but the decisions of the Commission are entitled to equal precedential deference. See Section 22, Article IV, Ohio Constitution.

decision not to set aside the jury's verdict upon grounds of juror misconduct was upheld, the court reasoning:

"While the conduct of the juror was clearly improper, and such as would ordinarily call for animadversion from the court, we wholly fail to discover from the testimony such misconduct as prevented a fair trial or an honest verdict.

"A different ruling would not operate justly. It would punish an innocent party for no offense of his. When the juror is guilty of violating both oath and duty by improper conduct, he should be made to answer for it, and not an innocent party, in no way accessory to the misconduct of the juror.

"To arrest from a party a verdict, which appears to have been honestly obtained, after long and expensive litigation, merely because a juror has been so indiscreet as to speak of the case to a stranger, when he could have received no advantage from that improper act of the juror, and the opposite party no prejudice, would be scarcely compatible with the due administration of judicial justice. When, however, the prevailing party, or his agent or friend, has approached a juror during the trial, or while he has the case under consideration, and addressed the juror on the subject of the action, the verdict should be set aside. He should be made, in that way, to feel the punishment of violated law. [Citation omitted.]

"So, if it appears to the court that the unsuccessful party either did, or probably might have sustained injury from the improper conduct of the juror, a new trial should be granted, to the end that a verdict may be obtained, freed from suspicion that one party has been favored, or the other prejudiced by the misconduct of a juror. The court will seek, as far as practicable, to preserve the purity of trials by jury, and the books show that many learned judges have thought the surest way to attain that end is by setting aside every verdict where a juror has spoken of the case contrary to law. This is hardly the spirit of our statute, and would fail to attain the desired result. The juror suffers nothing by setting aside the verdict. The successful party alone is injured; and, if innocent, should not be made to suffer.

"Upon the whole, we think the rule that will best secure the desired result would be, that, in cases where the irregularity or misconduct of the juror appears to have operated in favor of the successful party, and as a necessary consequence, to the prejudice of the unsuccessful party, a new trial should be granted. On the other hand, where it appears that it has produced no such result, the verdict should be permitted to stand." *Armleder v. Lieberman, supra,* at 83-84.

{¶ 19} I commend this reasoning to trial judges today confronted with similar juror misconduct or irregularity. Litigation today is no less expensive in time and money than it was in 1877, when *Armleder* was decided. If the misconduct or irregularity is not the fault of the prevailing party, and if it does not appear likely that the verdict was influenced by the misconduct or irregularity, a trial judge, in the sound exercise of discretion, should ordinarily not declare a mistrial, but should accept the verdict, and render judgment accordingly.

{¶ 20} In the case before us, however, I cannot say that Judge Walker abused his discretion in declaring a mistrial, in view of the fact that counsel for both parties had expressed an opinion that the validity of the verdict had been brought into question by the presence of the alternate juror in the jury room during deliberations. Although counsel for Rist thereafter, but before the verdict was known to him, expressed a desire that inquiry be made of the regular jurors concerning the effect that the presence of the alternate juror may have had upon their deliberations, in my view the trial judge was within his discretion in rejecting this proposal because of the invasion of the privacy of the jury's deliberations that would necessarily have resulted from the proposed inquiry.

―――――――――――

**COOK, J., dissenting.**

{¶ 21} I respectfully dissent from the majority's decision. I agree instead with the court of appeals' view that the trial court abused its discretion when it *sua sponte* declared a mistrial in this case.

8

**{¶ 22}** Like Judge Fain, I find this court's reasoning in *Armleder* to be "remarkably applicable" even today.  But *Armleder* imposes a duty on the trial judge to "*seek, as far as practicable*, to preserve the purity of trials by jury" by *assessing* whether the irregularity prejudiced the unsuccessful party, or whether—as in *Armleder*—it "produced no such result."  (Emphasis added.)  *Armleder v. Lieberman* (1877), 33 Ohio St. 77, 84; see, also, *State v. Hipkins* (1982), 69 Ohio St.2d 80, 83, 23 O.O.3d 123, 125, 430 N.E.2d 943, 946 (A trial court should not reverse a verdict on the basis of juror misconduct absent prejudice to the complaining party.).

**{¶ 23}** If the trial court here had made the assessment that *Armleder* and our more recent cases describe, I would be less inclined to find an abuse of discretion, regardless of the trial court's ultimate conclusion.  But after learning that Brownell was in the jury room during deliberations, the trial judge told counsel, "I hate to say this, but I think we've got a mistrial."  Then, without any evidence of prejudicial effect—and without a motion from either party—the trial judge declared, "I will read the verdict and then I will poll the jury, and then I'm going to have to declare a mistrial. * * * I don't have any option."

**{¶ 24}** To the trial judge, a mistrial was a foregone conclusion.  This violates the letter and spirit of our law, which "seeks, as far as practicable, to preserve" verdicts by requiring a meaningful investigation into prejudice.  *Armleder, supra.*  "[W]here the trial court completely misconstrues the letter and spirit of the law, it is clear that the court has been unreasonable and has abused its discretion."  *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 99, 521 N.E.2d 1091, 1098-1099, fn. 10, citing *Ojalvo v. Bd. of Trustees of Ohio State Univ.* (1984), 12 Ohio St.3d 230, 232-233, 12 OBR 313, 315, 466 N.E.2d 875, 877.

**{¶ 25}** Judge Fain concludes that the trial court's error, if any, was the result of an "implicit invitation" from counsel for both parties.  But I would not apply the doctrine of invited error here.  Invited error is a branch of the waiver doctrine that

estops a party from seeking to profit from an error that the party invited or induced. See *State ex rel. Fowler v. Smith* (1994), 68 Ohio St.3d 357, 359, 626 N.E.2d 950, 952.

{¶ 26} Here, neither party invited or induced the trial court's error. Neither the plaintiff nor the defendant actually moved for a mistrial prior to the trial court's *sua sponte* declaration of a mistrial. An implicit invitation should not estop Dr. Rist from arguing, as he did successfully at the court of appeals, that the trial court abused its discretion by *sua sponte* declaring a mistrial without any evidence of prejudice. See *Mary M. v. Los Angeles* (1991), 54 Cal.3d 202, 212-213, 285 Cal.Rptr. 99, 104, 814 P.2d 1341, 1346; *Horsemen's Benevolent & Protective Assn. v. Valley Racing Assn.* (1992), 4 Cal.App.4th 1538, 1555, 6 Cal.Rptr.2d 698, 708 ("no estoppel results from acts of the appellant which are defensive or precautionary").

{¶ 27} I would affirm the judgment of the court of appeals.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

_____