JOURNAL ENTRY AND OPINION
Defendant-appellant Willie Wade, a Cleveland housing inspector, appeals from his convictions following a jury trial in Cleveland Municipal Court on five separate complaints of bribery prohibited by R.C. 102.03(E). Defendant contends the trial court erred in granting the prosecution motion for a mistrial after the impaneling of the original jury in violation of defendant's constitutional protections against double jeopardy; in refusing certain jury instructions requested by defendant; in failing to acquit for lack of sufficient evidence. Defendant also claims his convictions were against the manifest weight of the evidence. We find no error and affirm.
In March 1995, defendant was employed as a housing inspector for the City of Cleveland. He was a public official whose duties included inspecting properties within the City and issuing citations to property owners who violated the City housing code. In the summer of 1995, defendant issued a citation to Ioan Valentin for overgrown weeds located on one of his properties. Valentin owns the Valentin Investment Corporation, a Cleveland corporation, that owns real properties in the area where defendant performed inspections for building code violations. Shortly after issuing the citation to Valentin, defendant went to Valentin's property to determine if the violation had been corrected. After inspecting the violation, defendant and Valentin went to Valentin's residence where they had beverages and visited.
After this initial meeting, defendant intermittently contacted Valentin asking him to borrow money and Valentin complied with defendant's requests. Some time later, Valentin needed help with his Bratenahl property and decided to ask defendant to recommend a plumber to make repairs to the property. Defendant told Valentin that it would cost him $1,500 for this name. Valentin subsequently wrote five checks to defendant totaling $1,500 based on defendant's requests. The following checks were given to defendant by Valentin Investment Corporation: on May 7, 1997 for $50.00; on May 9, 1997 for $500.00; on May 12, 1997 for $200.00; on May 16, 1997 for $100.00; and on June 26, 1997 for $650.00. These checks were all written at Valentin's office located at 2030 West 87th Street in Cleveland and signed by Valentin who knew defendant was a public housing inspector. The defendant endorsed and cashed all the checks. Within this eight-week period, defendant received a total of $1,500.00 from Valentin Investment Corporation throughout which time Valentin was not cited for a housing violation among any of his numerous properties.
In addition to these five checks, Valentin gave defendant money on at least five other occasions. Valentin stated that defendant asked Valentin to lend him money on the following dates: $100.00 on December 6, 1995; $100.00 on June 8, 1996; and $400.00 on June 24, 1996. Valentin wrote checks on those dates for those amounts to defendant. Valentin also paid with his credit card ($178.00) to have defendant's car taken out of impound from the Cleveland municipal parking lot. Valentin also stated that he gave defendant $50.00 in cash on one other occasion.
According to Valentin, all of these transactions were at the request of defendant and Valentin never volunteered to give defendant any of this money. Valentin testified, however, that defendant never told him that he would not be cited in exchange for the money. However, Valentin was never cited for any violations on his properties during the time in which he was giving defendant money.
In the spring of 1997, Bernadette Holman became the new housing inspector in the area previously supervised by defendant. She inspected the same properties owned by Valentin which were inspected by defendant shortly beforehand, and in November 1997, Holman cited Valentin on two of his properties. In June 1998, Valentin was brought into housing court to settle the citations he received from Holman. During this court appearance, Valentin reported to the housing court judge that he did not want to get in this situation — to give her [Holman] money, again like I gave Willie Wade and then not have the money back. Apparently, Holman had directly asked defendant for money and in exchange she said she would not cite him. When he refused to pay, she cited him. Based on Valentin's statement, the judge brought in Det. Brady to investigate Valentin's allegations. Shortly thereafter, Valentin, Det. Brady and Det. Fryer met with the court to discuss the accusations and to examine the five checks that Valentin had written to defendant. Subsequently defendant was charged with five counts of bribery.
On March 31, 1999 the trial court set the trial date for April 29, 1999. On April 29, 1999, a jury was impaneled and sworn and the case was continued to April 30, 1999 for opening statements. On April 30th, prior to opening statements being given, the City moved the trial court for a mistrial due to juror misconduct arising out of a juror's expressed concern over security matters in that during voir dire the defendant had access to the jury panel lists showing names and addresses. The City's motion was granted by the trial court and the jury was dismissed. Subsequently, the trial court set a new trial date for June 7, 1999.
On June 7, 1999, trial was commenced, and on June 9, 1999 defendant was found guilty on each of the five bribery charges. On June 28, 1999, defendant was sentenced on each complaint to one hundred eighty days of incarceration with one hundred and seventy-seven days suspended. He was given credit for three days served. Defendant was also fined $1,000.00 on each complaint with $800.00 of the fine suspended on each complaint. In lieu of the fines and costs the trial court ordered defendant to perform sixty hours of community work service on each of his five cases for a total of three hundred hours of community work service. He was further sentenced by the trial court to make full restitution of the loans to Valentin in the amount of $1,300.00. Valentin had testified that defendant had only paid him $200.00 back. Defendant was placed on one year of active probation. From these convictions, this timely appeal ensued.
We will address defendant's assignments of error in the order asserted and together where it is appropriate for discussion.
 I. THE TRIAL COURT ERRED BY GRANTING THE PROSECUTION'S MOTION FOR A MISTRIAL.
 II. THE TRIAL COURT DENIED DEFENDANT FIFTH AMENDMENT PROTECTION AGAINST DOUBLE JEOPARDY BY ORDERING A SECOND TRIAL.
Defendant essentially contends that the trial court erred when it granted the City's motion for a mistrial based on jury misconduct because (1) the City failed to raise its motion for a mistrial in a timely fashion, thereby waiving its right to move the trial court for a mistrial and (2) the City failed to demonstrate the juror misconduct created such a manifest necessity as to warrant the trial court in granting its motion for a mistrial. We find that the resolution of both of these assignments of error hinges on the disposition of the second one.
It is true, as defendant contends, that a party who discovers he has been substantially prejudiced must make his objection and move for a mistrial as soon as he discovers the grounds for that motion, and unless such action is timely taken, any right to a mistrial will usually be waived. Yerrick v. East Ohio Gas Co. (1964), 119 Ohio App. 220, 224. Even so, the trial court must determine whether proceeding with a second jury will violate defendant's constitutional rights. The law on this subject was well stated in Sidney v. Little (1997), 119 Ohio App.3d 193,196-197:
 Under the Double Jeopardy Clause, the issue of whether subsequent prosecution can be had after a mistrial has been declared is dependant on two things: first, whether jeopardy has attached and, second, whether, if jeopardy has attached, a retrial is barred by the Constitution or falls within an exception. Jeopardy will attach so as to preclude subsequent criminal proceedings at different points in time depending on the nature of the proceeding in question. State v. Gustafson (1996), 76 Ohio St.3d 425, 435, 668 N.E.2d 435, 443, citing Crist v. Bretz (1978), 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24. As in the present case, [w]here a criminal defendant has invoked the right to trial by jury, jeopardy does not attach so as to preclude subsequent criminal proceedings until the jury is impaneled and sworn. Gustafson at 435, 668 N.E.2d at 43. Clearly, jeopardy had attached in appellant's case since the jury was impaneled and opening statements had commenced.
 [I]n cases in which a mistrial has been declared prior to verdict, the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial. Illinois v. Somerville(1973), 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425, 433. Therefore, whether a subsequent prosecution of appellant could proceed depends on whether an exception applies to the double jeopardy bar. In cases where a mistrial has been declared without the defendant's request or consent, double jeopardy will not bar a retrial if (1) there was a manifest necessity or a high degree of necessity for ordering a mistrial, or (2) the ends of public justice would otherwise be defeated. Id.; Arizona v. Washington (1978), 434 U.S. 497, 505-506, 98 S.Ct. 824, 830-831, 54 L.Ed.2d 717, 727-729; see, also, United States v. Dinitz (1976), 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267; State v. Widner (1981), 68 Ohio St.2d 188, 189, 22 O.O.3d 430, 430-431, 429 N.E.2d 1065, 1066; Hines v. State (1873), 24 Ohio St. 134, paragraphs one and two of the syllabus. Where the mistrial was granted upon the request of the prosecutor and over the objection of the defendant, the state carries the burden of demonstrating the manifest necessity of the mistrial in order to avoid the double jeopardy bar. See Arizona, 434 U.S. at 505, 98 S.Ct. at 830, 54 L.Ed.2d at 727-728. However, if the defendant requested the mistrial, there is no bar to retrial. See United States v. Jorn (1971), 400 U.S. 470, 485, 91 S.Ct. 547, 557 27 L.Ed.2d 556-557.
 Therefore, the pivotal issue in this case is whether a manifest necessity existed to warrant a mistrial. An order of the trial judge declaring a mistrial during the course of a criminal trial, on motion of the state is error and contrary to law, constituting a failure to exercise sound discretion, where, taking all the circumstances under consideration, there is no manifest necessity for the mistrial, no extraordinary and striking circumstances and no end of public justice served by a mistrial, and where the judge has not made a scrupulous search for alternatives to deal with the problem. State v. Schmidt (1979), 65 Ohio App.2d 239, 244-245, 19 O.O.3d 201, 204, 417 N.E.2d 1264, 1269, citing Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed. 543; Downum v. United States(1963), 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100; United States v. Perez (1824), 9 Wheat. 579, 22 U.S. 579.
With these general principals in mind, we turn to the facts of this case.
In the present case, the trial court scheduled the initial jury trial on April 29, 1999. On that date, a jury was brought into the courtroom and the attorneys from both sides conducted voir dire. At the completion of voir dire, a jury was picked by the parties, impaneled and sworn. At that time, both parties indicated that they were satisfied with the impaneled jury. However due to the late hour, the trial court continued the case to the next day, at which time opening statements would be given.
Prior to excusing the jury, the trial court instructed the jury that whenever they leave the courtroom that they shall not discuss the case with anyone, nor permit anyone to discuss the case with them. The trial court further instructed the jury that they were not to converse with, nor permit themselves to be addressed by any person, nor listen to any conversation of the subject of the trial, nor form or express any opinion thereon until the case was finally submitted to them. Following this admonition, the jury was excused for the evening. Counsel then preceded to discuss the trial with the trial court in chambers.
At this time, the trial court bailiff informed the court that Juror No. 6, Mr. Young, in the presence and full hearing of the entire jury, asked, if the defendant is allowed to look at the addresses on this sheet here, what type of security measures would be taken considering he knows their address. The bailiff further indicated that Mr. Young wanted to know what security measures would be taken if defendant was found guilty, considering that he knew their addresses. In response to these questions, the trial court and counsel for the parties agreed to bring the entire jury back into the courtroom to let them know that the juror sheets would be placed into a sealed envelope which would then be kept with the court reporter.
The entire jury was subsequently brought back into the courtroom. At this time, the trial court asked Mr. Young to state his question to the court. Mr. Young went on to state:
 My question was in reference to the security of the people that was on the jury panel because they're worried about whether or not their client can get the best answer from us.
 And we were worried about on the computer printout — they have the printout on the — in front of them of all our addresses and every time a juror is dismissed, and then I see him — him, Mr. Willie, looking over at the paper.
 So I was wondering if he was writing our address down. If we make a decision of guilty or not guilty and he loses his job, and then he go on a rampage and flip out and he show up at one our houses, that's what I was concerned about, the security of the jurors.
(Tr. at 191-92).
After the trial court addressed the jurors' question regarding security, Mr Young requested that he be able to make an additional comment. The trial court again allowed Mr. Young to proceed in detail regarding his concerns, at which time he stated:
 With all due respect, I don't think that this client is capable of that, but I work in a secure facility, and I know that kids get on the phone all the time and call the victims and threaten the victims. And so that's why when I saw the sheet just laying out in front of him, I said, that's not too secure to me by having the defense just set the sheet in front of the client. And that's why I raised the question and I wanted to know.
(Tr. at 194).
Following this statement, the trial court again reassured the jurors that defendant did not memorize their addresses or have access to the information. The court then adjourned for the day and the jury was admonished that they were not to discuss the case with each other or anyone else.
The following day, after legal research and after listening to the statements made by Mr. Young, including the fact that he was voicing the concerns of the jury as a whole, the City decided that Mr. Young's statements were substantially prejudicial. The next morning, prior to any other matters being discussed by the trial court, the prosecution made a motion for a mistrial.
First, it must be noted that the City indicated its satisfaction with the impaneled jury prior to any statements made by Mr. Young. Second, although the City agreed with the curative instructions given by the trial court, the trial court did not indicate, nor was the City aware, that the trial court would allow Mr. Young to talk in detail regarding his safety concerns. Immediately following Mr. Young's startling statements the trial court excused the jury, and due to the late hour, adjourned court for the day. The prosecution recognized that these security concerns may very well impair the City's ability to get a conviction if the jurors were unduly concerned about what action the defendant may take against them.
As stated, supra, Yerrick requires a party who discovers he has been substantially prejudiced to make his objection and move for a mistrial as soon as he discovers the grounds for that motion. We find the City acted within reasonable time here given the unusual circumstance. City counsel, after listening to the comments made by Mr. Young, had great concerns regarding what had transpired. The following morning, in a timely fashion and within the mandates of Yerrick, the prosecution immediately raised its objection to the statements made by Mr. Young before any other matters were considered and moved for a mistrial. The trial court, after listening to the arguments of both sides, granted the City's motion.
Defendant further contends that the trial court erred in granting the City's motion for mistrial where defendant objected to the motion and no juror misconduct occurred.
This Court, in State v. Starks (Apr. 18, 1996), Cuyahoga App. No. 69441 unreported at 3, citing Petro v. Donner (1940), 137 Ohio St. 168, paragraph one of the syllabus, has stated that [t]he right to due process mandates the accused be tried before a fair and impartial jury on conclusions reached from evidence and argument in open court — not by outside influence. However, where the trial court has determined that a jury cannot be fair and impartial, this Court, citing to United States v. Perez (1824),22 U.S. 579, 580, set forth the following controlling standard: [a] mistrial may be granted, and the defendant retried, when there is a `manifest necessity' to do so, or to serve `the ends of public justice.' State v. Abboud (1983), 13 Ohio App.3d 62. This Court in Abboud, citing to Perez, further stated the following:
 * * * the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes * * *. Perez, supra. See, also, State v. Glover (1988), 35 Ohio St.3d 18, 20.
Id. at 62.
As stated supra, a trial court is vested with broad discretion to order a mistrial. Arizona v. Washington (1978),434 U.S. 497, 509-510. Thus, the trial court's decision under such circumstances is to be afforded great deference. Id. Because the decision to grant or deny a motion for mistrial rests within the sound discretion of the trial court, the standard of review we must apply is abuse of discretion, which connotes an attitude by the court that is unreasonable, arbitrary, or unconscionable. Koch v. Reist (2000), 89 Ohio St.3d 250, 251.
In the present case, the trial court did not abuse its discretion when it granted the City's motion for a mistrial due to juror misconduct. Mr. Young, the offending juror, made a number of inappropriate comments to the other jurors regarding their safety if they were to find defendant guilty. Mr. Young made specific comments regarding the entire jury's concern that, if they were to find defendant guilty, he may lose his job, go on a rampage or flip out and go to one of their houses. Since no evidence had been presented at the time Mr. Young made his comments, it was clear that the jurors had been discussing something that was not proper at that state of the trial.
In light of the foregoing, the trial court found that the jury, in fact had been tainted. The trial court specifically stated:
 And I believe that based upon the comments made, that there's a manifest necessity or high degree of necessity for ordering the Dismissal or Mistrial, or the ends of public justice would otherwise be defeated if we did not have a new trial in this matter.
 It also goes to both parties here having a fair trial, as I indicated, and it's also in the public's interest. For a fair trial is defined to even just judgment, and I believe this jury has been tainted.
(Tr. at 226).
Clearly, the statements made by Mr. Young were of such irregularity that the jury's judgment might be affected or their verdict improperly influenced. Therefore, the trial court, in granting a mistrial, did not abuse its discretion.
Assignments of Error I and II are overruled.
 III. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN DEFENDANT'S CONVICTIONS AND THE CONVICTIONS SHOULD BE REVERSED AS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
The standard of review we must observe in passing on sufficiency of the evidence and manifest weight of the evidence issues were set forth by the Supreme Court of Ohio as follows in State v. Thompkins (1997), 78 Ohio St.3d 380, 386-87:
 The state asserts that sufficiency of the evidence and weight of the evidence are synonymous legal concepts. They are not. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. With respect to sufficiency of the evidence, `sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy.
 Whether the evidence is legally sufficient to sustain a verdict, is a question of law.
 State v. Robinson (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.
 Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. Robinson, supra, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief. (Emphasis added.) Black's supra, at 1594.
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 (The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction).
In the present case, defendant was charged with five counts of bribery pursuant to R.C. 102.03(E), which states:
 No public official or employee shall solicit or accept anything of value that is of such a character as to manifest a substantial and improper influence upon him with respect to his duties.
R.C. 102.03(E) requires that the thing of value solicited by a public official is of such a character as to manifest a substantial and improper influence upon him with respect to his duties. In the present case, evidence was adduced at trial that defendant was, in fact, Valentin's housing inspector and did solicit and accept the money from Valentin. The amount of money given to defendant was enough to influence him to avoid citing Valentin with any housing violations on his properties in the City of Cleveland. Throughout the period of 1995 and 1997, when Valentin was giving defendant the money, Valentin did not receive any housing code citations. As soon as a new housing inspector took the place of defendant, Valentin was cited and found guilty of violations on the same properties defendant had previously been inspecting.
Based on the foregoing, the evidence introduced at trial was sufficient to prove that defendant was guilty of each element of bribery on the counts in question. Furthermore, it cannot be said that the convictions were against the manifest weight of the evidence.
Assignment of Error of III is overruled.
 IV. THE TRIAL COURT ERRED BY REFUSING JURY INSTRUCTIONS AND DEFINITIONS REQUESTED BY THE DEFENDANT.
In his fourth assignment of error, defendant argues that the court erred in giving an instruction to the jury on other acts evidence over counsel's objection because the giving of such instruction needlessly drew the jurors' attention to actions which were unrelated to the crimes charged.
Evid.R 404(B) governs the admission of other acts evidence as follows:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
In the present case, the City, throughout the trial, presented the testimony of Valentin relating to other prior alleged bribes by defendant and payments by Valentin to show intent and motive of defendant in soliciting the money from Valentin. This testimony was never objected to by defendant and was properly admitted by the trial court.
In State v. Greer (1981), 66 Ohio St.2d 139, the Ohio Supreme Court stated:
 * * * in a trial of a bribery charge, the proof that money or other consideration changed hands does not per se prove the intent of the defendant, and there remains the requirement of further evidence on the element of the reason or intent of the transfer and receipt of any monies. * * * The standard of proof in this criminal matter remains proof beyond a reasonable doubt, and it is not contrary to law that the state be allowed to present additional evidence of other acts pursuant to R.C. 2945.59 to substantiate the motive, intent, or plan of the accused liquor agents in order to support the charge of bribery.
Id. at 143.
In the present case, the trial court provided the jury with the following charge as it relates to other acts evidence:
Jury Instruction No. 4: Other Acts, Purpose.
 Evidence was introduced that the defendant may have committed another act similar to that charge in this case. If you find that he did commit such other act, you must limit it in your consideration. If you find from other evidence that the defendant did commit that act with which he is now charged, if needed you may consider evidence of (an) other act(s) to determine the existence of purpose, motive, scheme, plan or system, absence of mistake or accident of the defendant in this case.
 Evidence of other acts may not be considered as any proof whatsoever that the defendant did any act alleged in the complaint in this case.
(Tr. II at 646-47).
Based on the testimony presented in the present case, which included evidence that defendant had on a number of other occasions asked Valentin for various amounts of money, the trial court did not abuse its discretion in issuing such an instruction on the defendant's prior acts. The trial court carefully restricted the evidence to the limited purpose for which it was offered. We find no error in its doing so.
Assignment of Error IV is overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cleveland Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
DYKE, A.J., and MICHAEL J. CORRIGAN, J., CONCUR.
JAMES M. PORTER, JUDGE