OPINION
Defendant-appellant, Belajaron Couch, appeals his conviction following a jury trial in the Butler County Court of Common Pleas for two counts of aggravated trafficking. We reverse the conviction.
Appellant had been out of work since 1987 due to a work-related injury. As a result of the injury, appellant was prescribed pain medication.
On December 27, 1999, Sharon Smith, appellant's sister-in-law, acted as a confidential informant for the Butler County Sheriff's Department and set up a drug transaction between appellant and Officer Kristin Scandlon-Dalman. Officer Scandlon-Dalman picked up Sharon and appellant and drove them to Star Avenue. Officer Scandlon-Dalman gave appellant $100 that had been photocopied for the transaction, and appellant entered a house on Star Avenue. Appellant returned to the car and handed Officer Scandlon-Dalman four tablets of Dilaudid, a Schedule II narcotic.
On January 3, 2000, Sharon contacted the Butler County Sheriff's Department again and set up a second buy from appellant. Officer Scandlon-Dalman picked up Sharon and appellant and drove them to Star Avenue. Officer Scandlon-Dalman gave appellant $50 that had been photocopied for the transaction and appellant entered a house on Star Avenue. Appellant returned to the car and handed Officer Scandlon-Dalman two Dilaudid tablets.
On January 31, 2000, Sharon contacted the Sheriff's Department again and set up a buy from appellant to purchase Oxycontin, another Schedule II narcotic. Officer Scandlon-Dalman wore an audio-transmitting device and she went to Sharon's home. Inside Sharon's residence, appellant gave Officer Scandlon-Dalman Oxycontin in exchange for $30 that had been photocopied for the transaction.
On April 26, 2000, appellant sold drugs to Officer Scandlon-Dalman a fourth and fifth time. Officer Scandlon-Dalman and Officer Randy Lambert went to Sharon's home and found appellant. The officers asked appellant if he had any pills to sell. Appellant informed Officer Scandlon-Dalman that he had Oxycontin tablets, which he would sell for $25 each. Officer Scandlon-Dalman purchased two tablets and said she would return with more money. One hour later Officer Scandlon-Dalman returned and appellant sold her four Oxycontin tablets in exchange for $100 that had been photocopied for the transaction. Officer Scandlon-Dalman gave her backup officers a signal over an audio-transmitting device and, immediately after the sale, the team went into Sharon's home and arrested both appellant and Officer Scandlon-Dalman.
Appellant was charged with five counts of aggravated trafficking and five counts of aggravated possession. Appellant was tried before a jury on March 26, 2001, and convicted of two counts of aggravated trafficking in drugs. The court sentenced appellant to serve five years of community service. Appellant appeals raising three assignments of error, which will be discussed out of order:
Assignment of Error No. 2:
 "THE TRIAL COURT COMMITTED PREJUDICIAL [SIC] IN REFUSING TO PERMIT DEFENDANT TO PUT ON EVIDENCE OF HIS FINANCIAL DISTRESS AT THE TIME OF THE INDICTMENT IN QUESTION."
Appellant argues "where the defense is entrapment and there is evidence to show that [appellant] was solicited by the State, the issue is whether [appellant] was induced to commit an offense he would not otherwise have committed." Appellant argues he was entrapped because he never engaged in prior drug sales or related activity, he never offered drugs to any officers, and there is no evidence of any prior disposition to commit drug offenses. Appellant argues the court should have permitted him to introduce evidence of his susceptibility to the State's inducement.
The admissibility of evidence is within the sound discretion of the trial court; absent an abuse of discretion, the ruling of the trial court will not be disturbed upon appeal. State v. Sage (1987), 31 Ohio St.3d 173,180. The term "abuse of discretion" connotes more than a mere error of law or judgment; the term implies that the court's decision is unreasonable, arbitrary, or unconscionable. Koch v. Rist,89 Ohio St.3d 250, 251, 2000-Ohio-149.
Entrapment is an affirmative defense under R.C. 2901.05(C)(2). Statev. Doran (1983), 5 Ohio St.3d 187, paragraph two of the syllabus. To successfully assert the defense, and, thus, be acquitted of the offense charged, a defendant must prove that "the criminal design originate[d] with the officials of the government, and they implant[ed] in the mind of an innocent person the disposition to commit the alleged offense and induce[d] its commission in order to prosecute." Id. at paragraph one of the syllabus. However, "entrapment is not established when government officials `merely afford opportunities or facilities for the commission of the offense' and it is shown that the accused was predisposed to commit the offense." Id. at 192, quoting Sherman v. United States
(1958), 356 U.S. 369, 372, 78 S.Ct. 819.
In Ohio, courts use a subjective test to determine whether a defendant was predisposed to commit a crime. To assist in determining predisposition, the Doran Court advanced a nonexclusive list of relevant factors: "(1) the accused's previous involvement in criminal activity of the nature charged, (2) the accused's ready acquiescence to the inducements offered by the police, (3) the accused's expert knowledge in the area of the criminal activity charged, (4) the accused's ready access to contraband, and (5) the accused's willingness to involve himself in criminal activity." Doran, 5 Ohio St.3d at 192.
Appellant has had previous involvement in criminal activity of the nature charged. Appellant admitted to bartering his Oxycontin pills for services. Appellant was asked, "now, after you got back from the store with your prescription, what happened?" Appellant answered, "I had to give [Sharon] three of `em for getting me a ride there." Appellant readily acquiesced to the inducements offered by the police. When appellant was asked "what caused you to sell those pills," he responded, "[t]hey came to me, on the day of the arrest, and we all needed cigarettes, kids like to have a little pop, and she approached me with the money, and I accepted it." Appellant had knowledge in the area of the criminal activity charged. When appellant was asked if he knew "it's illegal" to sell "those Oxycontin's [sic] that you get from the doctor," appellant answered "yes." Appellant was also asked if he "took the steps, made the effort, to find pills for [Officer Scandlon-Dalman]," he answered, "yes, I did." Appellant had ready access to narcotics since he had a prescription for Oxycontin. Appellant also willingly involved himself in the criminal activity. Appellant was asked, "[s]o on April 27 [sic], when you sold the Oxycontin's [sic] to the agent, you did that knowingly, and willfully, because you needed the money, correct." Appellant answered, "yes."
Where a person is ready and willing to break the law, the fact that the government agents provide what appears to be a favorable opportunity to do so is not entrapment as a matter of law. Doran, 5 Ohio St.3d at 192. Therefore, the trial court did not err in restricting appellant's admission of evidence concerning his susceptibility to being entrapped.
Appellant also argues that the trial court erred in excluding information concerning his financial difficulties. Appellant submits that the information was proper to prove his defense of entrapment. Appellant contends that he was particularly vulnerable to the inducement of money because of his financial difficulties. We cannot see how the court's ruling prejudiced defendant. Indeed, financial gain is the most obvious motive for drug dealing. Moreover, the record reveals that appellant successfully placed his financial difficulties into evidence.
Appellant was asked on direct examination, "tell me what happened with respect to your employment, relative to the injury that you sustained on [sic] 1987." Appellant answered, "the only thing I really knew how to do was cut meat. * * * and [the injury] kind of put me out of work." Appellant was also asked, "tell the ladies and gentleman of the jury why you sold her the pills." Appellant answered, "I didn't have any money. It was quick money I that's the truth. I had $15.00 in my pocket."
The trial court did not act unreasonably, arbitrarily, or unconscionably by restricting the amount of evidence concerning appellant's financial distress. Consequently, the trial court did not err with respect to evidence of appellant's financial distress. The transcript exhibits that appellant was allowed to place his financial difficulties into evidence, and that he deliberately involved himself in criminal activity to make money. Therefore, the second assignment of error is overruled.
Assignment of Error No. 1:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN FAILING TO GRANT APPELLANT'S MOTION TO DISMISS/OR FOR MISTRIAL DUE TO PROSECUTOR MISCONDUCT."
Appellant argues that the State's attorney ignored a prior court order and put improper evidence before the jury. The State's attorney was instructed not to raise the issue of the Vicodin found in appellant's prescription bottle since there were no charges related to the Vicodin. At trial, the State asked Officer Scandlon-Dalman an open question that elicited a response regarding the Vicodin. Appellant moved for a mistrial based upon the "deliberate misconduct" for disobeying the court's instruction about the Vicodin. The court ruled against granting a mistrial.
The standard of review for ruling on a motion for mistrial is abuse of discretion. State v. Simmons (1989), 61 Ohio App.3d 514, 517. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable, and not merely an error of law or judgment. Koch v. Rist, 89 Ohio St.3d 250, 251,2000-Ohio-149.
Prosecutorial misconduct is not grounds for reversal unless a review of the entire record shows that the prosecutor's conduct at trial was improper and so taints the proceedings that defendant has been denied a fair trial. See State v. Smith, 87 Ohio St.3d 424, 442, 2000-Ohio-450;State v. Cornwell, 86 Ohio St.3d 560, 570, 1999-Ohio-125; State v. Lott
(1990), 51 Ohio St.3d 160, 166. Important considerations are whether the misconduct was an isolated incident or a protracted series of improper arguments, whether the defendant objected, whether curative instructions were given, and whether the evidence of guilt was overwhelming. Statev. Keenan (1993), 66 Ohio St.3d 402, 410.
During the arrest, a pill bottle with appellant's name upon the label containing both Oxycontin and Vicodin pills was found near appellant. When the State's attorney asked the judge about the issue of Vicodin, the judge stated, "I'm not going to admit it. There's no basis for it. There's no charge." Shortly thereafter, Officer Scandlon-Dalman was on the witness stand, the State's attorney handed her State's exhibit number six and asked, "could you open [the envelope] up and look inside it please? Do you recog[nize] what's contained inside that envelope?" Officer Scandlon-Dalman answered, "a prescription bottle and [appellant's] name containing the oxycontin." The State's attorney then asked, "[a]nything else inside that envelope?" Officer Scandlon-Dalman answered, "[y]es, Vicodin pills." Upon the answer, appellant's counsel objected and motioned for a mistrial. The court denied the motion and issued a curative instruction.
The incident was limited to a single open question that elicited a response regarding a subject the attorney was told not to introduce. The State's attorney indicated to the judge that the response given was not the response she was intending to elicit. The State's attorney stated, "I didn't say bottle I said envelope. * * * I asked what was in the envelope. I did not expect that to be the answer." The defense objected and a curative instruction was given. Furthermore, we must presume that the jury followed the instructions, including instructions to disregard testimony. See State v. Jones, 90 Ohio St.3d 403, 414, 2000-Ohio-187;State v. Wilson (1972), 30 Ohio St.2d 199.
The single open question that elicited the response concerning Vicodin did not so taint the proceedings as to deny appellant a fair trial given the curative instruction. Therefore, the trial court's decision against granting a mistrial was not unreasonable, arbitrary or unconscionable.
However, appellant also argues the State withheld evidence of Sharon's criminal record and all evidence regarding inducements offered to convince her to aid the Sheriff's Department as a confidential informant. Appellant argues withholding this evidence requires a reversal. We agree with appellant.
In Brady v. Maryland, the Supreme Court of the United States held that the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or punishment." Brady v. Maryland (1963), 373 U.S. 83, 87,83 S.Ct. 1194. Thereafter, in United States v. Bagley (1985), 473 U.S. 667,676, 105 S.Ct. 3375, the court noted that impeachment evidence also falls within the Brady rule. The Bagley court further noted that a finding of materiality was also required. Id., 473 U.S. at 682. For the evidence to be material, there must be "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id.
The defense requested the complete criminal record of the confidential informant and all inducements offered to that informant. The State maintained that Sharon was not offered any inducements to aid law enforcement. After the trial commenced, a written confidential informant contract between Sharon and the Sheriff's Department was disclosed to the defense by the judge following an in camera review of the law enforcement investigative file. Sharon and Officer Mark Smith signed the confidential informant contract on January 2, 2000. The contract states, "[i]n agreeing to work with the Butler County Sheriff's Office D.V.I. Unit, I understand that no unit detective may make any explicit or implicit promise or prediction regarding the likely disposition of any criminal proceedings that may be pending against me, but unit detectives will arrange a meeting with members of the Prosecutors staff at which time such matters may be discussed." Officer Mark Smith was not disclosed as a material witness.
Another in camera review disclosed a pending felony case against Sharon, for receiving stolen property, that was not disclosed to the defense until the trial began. Sharon was charged with receiving stolen property on February 20, 2000. The disposition date of the receiving stolen property charge is March 24, 2000, which is the same date a six-count indictment for trafficking in drugs against Sharon was disposed.
The nondisclosure of this evidence until trial was underway denied the defense the ability to develop the evidence with the proper witnesses. There is a reasonable probability that, had the evidence been disclosed to the defense before trial, the result of the proceeding would have been different. Therefore, the withheld evidence was material.
In sum, appellant requested the withheld evidence relating to the state's confidential informant, the evidence was favorable to appellant, and the evidence was material. Therefore, appellant's due process right to a fair trial was violated by the State's nondisclosure. Consequently, the first assignment of error is well-taken and the conviction is reversed.
Assignment of Error No. 3:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN SENTENCING APPELLANT TO CONSECUTIVE TERMS OF IMPRISONMENT, IN EVENT OF A PROBATION VIOLATION."
Given that this court finds that the conviction must be reversed, we decline to address the question raised in appellant's third assignment of error, as it has been rendered moot by our disposition of the first assignment of error. See App.R. 12(A)(1)(c).
The conviction and sentence are reversed and the case remanded for a new trial.
VALEN, J., concurs.
WALSH, P.J., concurs in judgment only.