McCARTHY et al., Appellees,

v.

STERLING CHEMICALS, INC., et al., Appellants.

[Cite as *McCarthy v. Sterling Chems., Inc.*, 193 Ohio App.3d 164, 2011-Ohio-887.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–090077, C–090082, C–090691 and C–090700.

Decided Feb. 25, 2011.

See also, 2009 WL 4890663, 2008 WL 7293901, 2008 WL 7293900, 2008 WL 7293898, 2008 WL 7293902, and 2008 WL 7293899.

Waite, Schneider, Bayless & Chesley Co., L.P.A., Stanley M. Chesley, D. Arthur Rabourn, Joseph T. Deters, Louise M. Roselle, W.B. Markovits, Paul M. De Marco, and Christopher D. Stock, for appellees.

Vorys, Sater, Seymour and Pease L.L.P., Robert E. Tait, and C. William O'Neill; and Mills Shirley L.L.P., Jack C. Brock, and Fred D. Raschke, for appellant Sterling Chemicals, Inc.

Katz, Teller, Brant & Hild, Robert A. Pitcairn Jr., Laura A. Hinegardner, and Matthew A. Rich, for appellant Rescar, Inc.

Sutter O'Connell & Farchione, Matthew C. O'Connell, Denise A. Dickerson, and Mallory R. Sander, for appellee ACF Industries, L.L.C.

Reminger & Reminger Co., L.P.A., and Joseph W. Borchelt; and Bates & Carey L.L.P., Scott L. Carey, Joseph P. Pozen, and Kathleen L. Hartley, for appellee Texana Tank Car & Manufacturing, Ltd.

Frost Brown Todd, L.L.C., and Matthew C. Blickensderfer, for third-party appellee Kinder Morgan Liquids Terminals, L.L.C.

---

WOLFF, Judge.

{¶ 1} Plaintiff-appellee Patrick McCarthy, an employee of third-party defendant-appellee Kinder Morgan Liquids Terminals, L.L.C. ("Kinder Morgan"), was injured on July 5, 2005, while transferring a liquid from a pressurized railroad tank car owned by defendant-appellant Sterling Chemicals, Inc. ("Sterling") to a Kinder Morgan storage tank. McCarthy was standing on the top of the railcar when the manway assembly separated from the car. McCarthy was struck by the manway assembly and fell 15 feet to the ground. McCarthy and his two minor children filed suit against various defendants including railcar owner Sterling, railcar manufacturer defendant-appellee ACF Industries, L.L.C. ("ACF"), defendant-appellant Rescar, Inc. ("Rescar"), which had been hired by Sterling to maintain its fleet of railroad cars, and defendant-appellee Texana Tank Car & Manufacturing, Ltd. ("Texana"), which had formerly maintained the railcar. Various defendants filed third-party complaints against McCarthy's employer, Kinder Morgan.

{¶ 2} The trial court granted summary judgment in favor of Kinder Morgan, determining that there was no genuine issue of material fact as to whether Kinder Morgan had committed an intentional tort against McCarthy and, therefore, that Kinder Morgan was not liable for damages. The court further determined that even though it was not liable for damages, Kinder Morgan would appear on the jury's apportionment form pursuant to R.C. 2307.23(A)(2), which requires that the jury determine the "percentage of tortious conduct that proximately caused the injury * * * that is attributable to each person from whom the plaintiff does not seek recovery." The court's judgment entry contained a certification pursuant to Civ.R. 54(B) that there was no just reason for

delay.  Rescar and Sterling appealed the granting of summary judgment in favor of Kinder Morgan in the cases numbered C–090077 and C–090082 respectively.

{¶ 3} The case proceeded to a jury trial.  After the plaintiffs' case-in-chief, the trial court granted directed verdicts for ACF and Texana, ruling that a May 2000 "change out" of the railcar's original 35–psi pressure-relief valve for a 75–psi valve constituted a substantial and material alteration of the railcar that relieved ACF and Texana of any liability.

{¶ 4} The trial court instructed the jury that McCarthy had the burden to prove by a preponderance of the evidence that Sterling and/or Rescar had been negligent and that the negligence had proximately caused McCarthy's injuries. The court also instructed the jury that to apportion fault to McCarthy and/or Kinder Morgan, it had to find by a preponderance of the evidence that McCarthy and/or Kinder Morgan had been negligent and that the negligence had proximately caused McCarthy's injuries.

{¶ 5} The court further instructed the jury, "The defendants are required to use ordinary care to discover and avoid danger.  The plaintiffs claim that the defendants failed to use ordinary care in maintaining, inspecting, and/or repairing a tank car.  As discussed above, ordinary care is the care that a reasonably careful person would use under the circumstances.  In considering this, you must decide what the facts and circumstances were, then you must decide whether the defendants used ordinary care.  If the defendants did not use ordinary care, they were negligent; if the defendants used ordinary care, they were not negligent."

{¶ 6} In instructing the jury about the effect of "industry regulations," the trial court stated, "Since the defendants' alleged negligence involves matters not within common knowledge, the parties introduced administrative laws, industry standards for organizations such as the American Association of Railroads and the American Welding Society.  You may consider these materials in determining what duty, if any, the defendants owed to the plaintiffs in this case, and whether or not the defendants breached this duty."

{¶ 7} The trial court instructed the jury that in assessing negligence, it was to "consider the defendants' own internal procedures" in determining the duty owed to the plaintiffs.  The court told the jury that "[w]hen a defendant has disregarded rules that it has established to govern the conduct of its own employees, evidence of those rules may be used against the defendant to establish the correct standard of care.  The content of such rules may also indicate knowledge of the risks involved and the precautions that may be necessary."

{¶ 8} The court explained the general verdict form, the interrogatories, the apportionment-of-fault form, and the damages form, which were given to the jury as a multipage document.  Page four of the document referred to "non-party"

Kinder Morgan. The court explained that if the jury found by a preponderance of the evidence that Kinder Morgan's actions were a proximate cause of McCarthy's injuries, it had to determine a "percentage of fault" to assign to Kinder Morgan.

{¶ 9} After the jury began deliberations, it returned with a question about the forms, asking, "How do we move forward from page (6) if we place the greater percentage of blame towards Kinder Morgan." Page six contained the apportionment-of-fault form. The court instructed the jury that it was to "continue to move through the document." The jury also requested the testimony of the "witness or Kinder Morgan employee who testified Patrick would have been written up for unloading procedure used." The jury subsequently returned with requests for the testimony of a certain witness who had testified concerning Kinder Morgan's practices and procedures, a Kinder Morgan tank-car inspection checklist, Kinder Morgan's unloading procedures, and Kinder Morgan's unloading-training procedures.

{¶ 10} The jury unanimously found in favor of Sterling and Rescar. The jury interrogatories indicated that the jury had found no negligence on the part of Sterling, Rescar, McCarthy, or Kinder Morgan. Plaintiffs moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial court granted plaintiffs' motion for a new trial. The court stated that it had granted the motion for a new trial because the court believed that in instructing the jury, it had not adequately explained that duties arising under "regulations and statutes" did not "trump" the duties arising under "common law." The court added that it believed that the jury had not been "fully informed" by the court's instructions regarding the relationship between the duty of ordinary care owed to McCarthy by Sterling and Rescar and the duties that arose from statutes and regulations governing the industry. Sterling and Rescar have appealed the trial court's granting of the motion for a new trial in the cases numbered C–090691 and C–090700 respectively.

{¶ 11} In the appeals numbered C–090077 and C–090082, Rescar and Sterling each raise one assignment of error, asserting that the trial court erred in granting Kinder Morgan's motion for summary judgment.

{¶ 12} Summary judgment is appropriate when, with the evidence construed most strongly in favor of the nonmoving party, the evidence shows that there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made.[1]

---

1. Civ.R. 56(C).

{¶ 13} R.C. 2745.01(A) states, "In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur." Pursuant to R.C. 2745.01(B), " 'substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death." [2]

{¶ 14} Sterling and Rescar argue that Kinder Morgan failed to provide fall protection for McCarthy, failed to adequately train and supervise McCarthy, and exposed McCarthy to a substantial risk of injury by requiring him to work on top of the railcar. Those alleged failures do not rise to the level of intent or deliberate intent to cause injury required by R.C. 2745.01. Sterling admits in its brief that it "has never claimed that Kinder Morgan deliberately intended to harm Mr. McCarthy." And Rescar does not point to any evidence that Kinder Morgan intended to injure McCarthy.

{¶ 15} Construing all the evidence in a light most favorable to Sterling and Rescar, we hold that the record contains nothing to demonstrate that Kinder Morgan committed a tortious act with the intent to injure McCarthy or that it acted with deliberate intent to cause McCarthy to suffer an injury. The record before us compels the conclusion under R.C. 2745.01 that there is no genuine issue of material fact and that Kinder Morgan was entitled to judgment as a matter of law. The assignments of error are overruled, and the judgment of the trial court is affirmed, in the appeals numbered C–090077 and C–090082.

{¶ 16} Sterling's first assignment of error in the appeal numbered C–090691 and Rescar's first assignment of error in the appeal numbered C–090700 assert that the trial court erred in granting McCarthy's motion for a new trial.

{¶ 17} We must first determine whether the trial court's decision to grant a new trial is to be reviewed de novo as a matter of law or under an abuse-of-discretion standard. Civ.R. 59 provides that the trial court may grant a new trial for an "[e]rror of law occurring at the trial and brought to the attention of the trial court by the party making the application" [3] or "in the sound discretion of the court for good cause shown." [4] What the trial court has "specified in writing as the cause for which the new trial was allowed" determines the scope of

---

2. R.C. 2745.01 was upheld as constitutional by the Ohio Supreme Court in *Kaminski v. Metal & Wire Prods. Co.,* 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066.

3. Civ.R. 59(A)(9).

4. Civ.R. 59(A).

appellate review.[5] "Where a trial court is authorized to grant a new trial for a reason which requires the exercise of a sound discretion, the order granting a new trial may be reversed only upon a showing of abuse of discretion by the trial court. Where a new trial is granted by a trial court, for reasons which involve no exercise of discretion but only a decision on a question of law, the order granting a new trial may be reversed upon the basis of a showing that the decision was erroneous as a matter of law." [6]

{¶ 18} In the judgment entry granting the motion for a new trial in this case, the trial court stated, "And so, under the Rules of Civil Procedure 59, the court can grant a new trial if the court finds that there was an error of law, among other things. This court believes, and it's based on a number of things. It's based upon, first of all, the fact as I sit throughout this hearing that this case was inundated by both statutes, regulations, AAR, Welding Society regulations, administrative laws, that most of these documents and regulations went to the jury for their consideration. It is my finding that those duties do not replace or trump those duties that arise at law.  * * *  I don't characterize this as a misstatement of law, but as a lack of a complete and thorough explanation of what the law is in this case.  * * *  I think that this court should have said that there are duties that rise at law that prevail regardless of whether an industry is regulated or not. And that you are to consider, as jurors, those duties that rise at law in conjunction with any duties that may or may not arise in any industry, but those duties that arise at law are not supplanted by the duties that rise from the self-policing or the federal regulation of a[n] industry unless those laws specifically say so. And that wasn't said in this case.  * * *  In looking at the charge, I agree that the court discussed issues of ordinary care and discussed issues of the federal regulations and administrative laws and standards. But this court did not make a distinction that despite the fact that [this] is a highly regulated industry that those regulations do not take precedence over the duty of ordinary care that is imposed upon anyone who's engaged in activities such as this. And so, for that reason, this court will grant a new trial.  * * *  [T]his court feels that there should have been a distinction, should have been a lengthy and proper explanation as to those duties that arise at law as they compare to duties that arise by way of statutes and regulations, and how those duties interact with one another and how those duties—one doesn't trump the other.  * * *  I wrote this jury charge based upon OJI [the Ohio Jury Instructions] and based upon the

---

**5.** See *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896; *Bellman v. Helmsworth* (June 20, 1979), 1st Dist. Nos. C–780135 and C–780139, 1979 WL 208686.

**6.** See *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685, paragraphs one and two of the syllabus.

suggestions of both sides of the case. But let me say for purposes of this case that this court considers OJI as the road map that the court used to tailor jury instructions, but jury instructions have to be tailored for each and every case, especially a case that is as long and complicated as this one. And I think that OJI serves as the basic road map, but I think sometimes courts need to go further based upon case law, based upon on each case on its own and not violate the law, but yet give an instruction that gives a jury a clear understanding of what the law is and how these laws relate to one another. I just don't think that was done in this case."

{¶ 19} In *Bellman v. Helmsworth,*[7] Mae Rita Bellman sued her deceased husband's doctor, J.A. Helmsworth, for medical malpractice. After the jury had returned a verdict in favor of Helmsworth, Bellman filed a motion for a new trial on the basis that the trial court's jury instruction on informed consent was erroneous and that she was "entitled to a directed verdict on this subject." The trial court granted a new trial because it believed that even though the jury instruction on informed consent was "technically correct," a more detailed instruction on informed consent might have allowed the jury to determine "that informed consent was lacking in this case." The court determined that while the instruction was "technically correct," it did not sufficiently "amplify the standard that the jury could use to determine the answer to this issue."

{¶ 20} On appeal, this court stated that the *Bellman* trial court's conclusion that the jury instruction, although "technically correct," was insufficient as a matter of law to a degree that prejudiced Bellman was tantamount to a determination that while the informed-consent charge may have been a correct statement of the law in a different factual context, in the factual context presented it was not a correct statement of the law and, as a result, may have influenced the jury to find against Bellman "in a way that a more comprehensive instruction may not have done." This court, citing *O'Day v. Webb,*[8] noted that instructing the jury was a mandatory, nondiscretionary duty of the trial court and that questions relating to the failure of the court to discharge that duty were questions of law, not of fact. Therefore, this court held, the trial court's decision to grant a new trial had to be reviewed de novo to determine whether it was erroneous as a matter of law.

{¶ 21} In the case sub judice, the trial court determined that even though its jury instructions on negligence, ordinary care, and duty were correct, it should have given a more detailed instruction on the relationship between the duties that

---

7.   *Bellman v. Helmsworth,* 1979 WL 208686.

8.   See *O'Day v. Webb,* 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896.

arose under the industry regulations and the duty of ordinary care under "common law." The court believed that it should have instructed the jury more clearly that the duties that arose under the industry regulations did not "trump" the "common law" duty to exercise reasonable care. The court appeared to say, as did the trial court in *Bellman*, that the instruction given, although correct, was an insufficient statement of the law in the factual context of the case. Therefore, pursuant to *Bellman*, the trial court's decision must be reviewed de novo to determine whether it was erroneous as a matter of law.

{¶ 22} The parties have cited *Nance v. Akron City Hosp.*[9] Nance's executor sued Akron Radiology and Dr. Syed Ali for medical malpractice. The trial court instructed the jury that it had to consider whether the doctor's negligence was "the" proximate cause of Nance's death. In response to a question from the jury, the court again instructed the jury that it had to consider whether the doctor's negligence was "the" proximate cause of Nance's death. The jury returned a verdict for the defendants. Nance moved for a new trial on the basis that the trial court's instructions had confused the jury about whether the defendants' negligence had to be "the" proximate cause or "a" proximate cause of Nance's death. The trial court stated that it was granting the motion (1) based upon the failure of the jury instructions "as a whole" to "fairly and accurately state the law to be applied," and (2) in the exercise of the court's discretion because the court concluded that even if the instructions were legally correct, they may have misled the jury and placed undue emphasis on the issue of whether the doctor's negligence was the sole proximate cause of Nance's death.

{¶ 23} On appeal, the Ninth Appellate District noted that the trial court had stated that it was granting the motion for a new trial on a question of law as well as in the court's sound discretion. The court pointed out the distinction between granting the motion for a new trial on the basis that the jury instructions as a whole failed to fairly and accurately state the law to be applied in the case, which the appellate court characterized as a question of law, and granting the motion in the trial court's sound discretion on the basis that the instructions, although correct, may have misled the jury by placing undue emphasis on the issue of whether the doctor's negligence was the sole proximate cause of the injuries. The appellate court stated that the jury's question showed that it had been confused by the court's instructions. The court had compounded that confusion by its answer to the jury's question. The appellate court upheld the granting of the motion for a new trial, holding that in light of the jury confusion demonstrated in the record, the trial court had not abused its discretion.

---

9. *Nance v. Akron City Hosp.* (May 23, 2001), 9th Dist. No. C.A. 20112, 2001 WL 542323.

{¶ 24} *Nance* is distinguishable from the case sub judice because the confusion on the part of the *Nance* jury was clearly demonstrated in the record. In other words, in *Nance* the record demonstrated that there was good cause for the granting of a new trial, something not present in this case.

{¶ 25} In the judgment entry granting the motion for a new trial in this case, the trial court stated, "And so, under the Rules of Civil Procedure 59, the court can grant a new trial if the court finds that there was an error of law, among other things." This indicates that the trial court granted the motion under Civ.R. 59(A)(9), which provides that the court may grant a new trial on an "[e]rror of law occurring at the trial and brought to the attention of the trial court by the party making the application."

{¶ 26} *Bellman* requires us to apply the erroneous-as-a-matter-of-law standard to the facts in this case. The record shows that three and a half volumes of the transcript of the proceedings were devoted to argument about and discussion of the jury instructions. The trial court gave verbatim McCarthy's requested instructions on negligence, ordinary care, and duty. The court's jury instructions correctly stated the applicable law, including the relationship between the duty to use ordinary care and the duties imposed by industry regulations. There is no indication in the record that the jury was confused by the court's instructions. From the beginning of the deliberations, the jury appeared to focus on Kinder Morgan as the negligent party. The only evidence of jury confusion in the record is the jury's confusion about how to fill out the apportionment form as to "non-party" Kinder Morgan. In short, there is nothing in the record to support the trial court's determination that the jury was confused about the court's instructions on the duty of care, except that a defense verdict was apparently unexpected.[10]

{¶ 27} If it is assumed, as the dissent argues, that the abuse-of-discretion standard set forth in the "catch-all" provision of Civ.R. 59 is applicable in this case, the record does not demonstrate good cause for a new trial because there is absolutely no indication that the jury was confused by the court's instructions. The assignments of error are sustained.

{¶ 28} The remaining assignments of error raised by Sterling and Rescar are made moot by our disposition of the first assignments of error. The judgment of the trial court is reversed in the appeals numbered C–090691 and C–090700, and the cause is remanded to the trial court with instructions to reinstate the jury verdict in favor of Sterling and Rescar and to enter judgment accordingly. The

---

10. Although the trial court stated that it was not granting the motion for a new trial based on the evidence or on the jury's verdict for the defense, the court expressed its "surprise" at the verdict.

trial court's judgment is affirmed in the appeals numbered C–090077 and C–090082.

Judgment accordingly.

BROGAN, P.J., concurs.

GORMAN, J., concurs in part and dissents in part.

JAMES A. BROGAN, J., retired, of the Second Appellate District, WILLIAM H. WOLFF JR., J., retired, of the Second Appellate District, and ROBERT H. GORMAN, J., retired, of the First Appellate District, sitting by assignment.

GORMAN, Judge, concurring in part and dissenting in part.

{¶ 29} I concur in the majority's decision and judgment affirming the trial court's judgment in favor of Kinder Morgan in the appeals numbered C–090077 and C–090082; however, I respectfully dissent from the majority opinion as it relates to the appeals numbered C–090691 and C–090700.

{¶ 30} The latter appeals question the degree of deference a reviewing court should give to a trial court's exercise of discretion when it orders a new trial under the authority of Civ.R. 59(A).

{¶ 31} In addition to the rule's enumerated range of choices, Civ.R. 59(A) further states, "[A] new trial may also be granted in the sound discretion of the court for good cause shown."

{¶ 32} When the trial court correctly instructs the jury, its decision to grant a new trial may be based not only on an error of law, but also upon its sound discretion.[11] While the instructions in this case were legally correct, the trial court could have found in its discretion that the verdict had resulted in a manifest injustice if the jury was confused.[12] The question then is whether a reasonable basis exists in the record to demonstrate the jury's confusion.

{¶ 33} Unlike the standard of review involving an error of law, which allows de novo review of the trial court's judgment, the standard of abuse of discretion entitles the trial court to the highest level of deference. When a trial court grants a new trial in the exercise of its sound discretion, the order may be reversed by a reviewing court only when the appellant demonstrates that the trial court abused its discretion.[13]

---

11. *Nance v. Akron City Hosp.*, 2001 WL 542323.

12. Id.

13. *Jenkins v. Krieger* (1981), 67 Ohio St.2d 314, 320, 21 O.O.3d 198, 423 N.E.2d 856.

{¶ 34} An abuse of discretion connotes more than an error of law; it implies an attitude on the part of the trial court that "is unreasonable, arbitrary or unconscionable." [14] In applying this standard, a reviewing court does not have the freedom to substitute its judgment for that of the trial court.[15] Therefore, if the trial court's exercise of discretion exhibits a sound reasoning process, a reviewing court should not disturb the judgment or order.[16]

{¶ 35} Admittedly, the trial court failed to articulate that its decision to grant the motion for a new trial was a matter of discretion. Notwithstanding this omission, the trial court's intent to exercise its discretion is clear from the following justification for its action: "[I]n all the years I have been on the bench I have never made a decision to upset the decision of a jury. In this case I am doing it because I believe that it is the fair and just thing to do."

{¶ 36} Conceding that its instructions were "legally correct," the trial court reasoned that the jury had been misled because the instructions failed to adequately explain that the duties specified in the industry regulations and federal statutes did not "trump" the duty of ordinary care under the common law. The court said, "I don't characterize this as a misstatement of law, but as a lack of complete and thorough explanation of what the law is in this case. I only say that only because of how much and how well this industry is regulated. And I believe that without that being pointed out that because of just the sheer amount of regulation of this industry, it foreshadowed this jury's consideration of what the law is as we, as attorneys, know as the common law. I don't think it would have been proper for the Court to say these duties arise at common law, but I think that this Court should have said that these are duties that rise at law that prevail regardless of whether the industry is regulated or not."

{¶ 37} The trial court did not wait until after the verdict to express its apprehension about juror confusion. During the trial, it expressed concern that the jury might have been confused about the common law and the statutory or regulatory duties. The court said to Sterling's counsel, "You guys went further and gave this jury the impression that your duties only arose from the statute and regulations of this industry and you hit the jury hard with that."

{¶ 38} The trial court's broad discretion to grant a new trial is essential " ' "to fulfill [its] function of maintaining general supervision over litigation to guard

---

14.  *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

15.  *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301.

16.  See *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597. See *Bowden v. Annenberg*, 1st Dist. No. C–040499, 2005-Ohio-6515, 2005 WL 3338935, at ¶ 49.

against miscarriages of justice which sometimes occur at the hands of juries." ' " [17]

{¶ 39} In arriving at its decision on a motion for a new trial, the trial court should be entitled to consider all pertinent circumstances.[18] The reviewing court should not selectively reject circumstances that the trial court said it had considered in reaching its decision. Unlike the review of documents, which an appellate court can interpret just as well as the trial court, a trial court has a better opportunity to grasp the atmosphere of the trial. This is not to suggest that the trial court's action is unreviewable. The record must demonstrate a basis for the trial court's action. And in this case, the evidence provides that basis.

{¶ 40} After the verdict, the trial court, apparently on reflection, concluded that the cause of McCarthy's injuries had to be negligence. Its belief that the instructions had left the jury ill-equipped to assess fault is corroborated by the jury's answers to the interrogatories. The jury stated that no one, including McCarthy, had been negligent. According to the jury, no one was at fault. But all the experts had agreed that the weld on the ring, the primary means by which the manway assembly was secured to the pressurized railcar, did not meet specifications and was defective. Neither Sterling, the owner, or Rescar, the maintenance contractor, had ever inspected the weld. It was also undisputed that the railcar had been designed and manufactured with a 35–psi pressure-relief valve that would activate if the pressure in the railcar exceeded 35 psi. But in 2000, Sterling and Rescar changed out the 35–psi relief valve for a 75–psi relief valve on tank cars that had been manufactured before October 1, 1997. Although increasing the pressure was permissible under federal regulations, there was expert evidence that the added pressure had compromised the safety of the railcar and had likely contributed to McCarthy's injuries.

{¶ 41} Sterling and Rescar now contend that contrary to the trial court's belief, the jury could reasonably have found that McCarthy's injuries had not been caused by negligence. This argument, however, is inconsistent with their trial strategy. In closing arguments, their counsel accused AFC, the manufacturer, and/or Kinder Morgan, McCarthy's employer, and even McCarthy himself, of negligently causing McCarthy's catastrophic injuries.

---

**17.** *Jenkins v. Krieger* (1981), 67 Ohio St.2d 314, 320, 21 O.O.3d 198, 423 N.E.2d 856, quoting *Rohde v. Farmer*, 23 Ohio St.2d at 93, 52 O.O.2d 376, 262 N.E.2d 685, quoting *Holland v. Brown* (1964), 15 Utah 2d 422, 426, 394 P.2d 77.

**18.** *Nance v. Akron City Hosp.*, 2001 WL 542323, citing *Koch v. Rist* (2000), 89 Ohio St.3d 250, 252, 730 N.E.2d 963.

{¶ 42} To establish reversible error, Sterling and Rescar have the burden to demonstrate that the trial court abused its discretion. The wisdom of its decision to set aside the jury's verdict may be debatable in this case, but a difference of opinion is not the test for an abuse of discretion. The trial court's explanation for granting the motion for a new trial demonstrates a rational thought process instead of a mindless reflex. Therefore, it was not arbitrary. Furthermore, the justification for its focus on the jury's confusion due to a lack of all the appropriate tools to properly assess negligence reflects a sound reasoning process.

{¶ 43} The majority relies on our decision in *Bellman*, 1979 WL 208686, holding that the standard of review involves an error of law and not an abuse of discretion when the instructions are correct and the trial court's reason for granting the motion for a new trial is grounded on the adequacy of the instructions. If *Bellman* is correct, I would agree with the majority, but in my view the holding in *Bellman* is the result of a faulty analysis.

{¶ 44} In *Bellman*, after the jury returned a defense verdict in a medical-malpractice case, the trial court granted a new trial, observing that its instruction on informed consent, while technically correct, should have been more detailed. In rejecting abuse of discretion as an appropriate standard of review, this court compared the standard of review for jury instructions to the standard of review for a directed verdict. A motion for a directed verdict under Civ.R. 50(A)(4), however, is limited exclusively to considerations of sufficiency of the evidence and poses, therefore, a question of law.[19] In *Bellman*, this court wrongly reasoned that, like a directed verdict, the trial court's duty to instruct the jury is a mandatory, nondiscretionary duty that involves a question of law. If *Bellman* is the rule, when the jury instructions are correct, the trial court does not have discretion to grant a new trial even if the trial court determines that the jury had become confused and that the verdict was a miscarriage of justice.

{¶ 45} Sterling and Rescar contend that review of the instructions is precluded because of McCarthy's failure to object. Civ.R. 51(A) states, "A party may not assign as error the giving or the failure to give any instruction unless [he] objects [thereto] before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." This rule originated in the common law when complaints against judgments were in the form of semicriminal proceedings against judges. Fairness dictated that the judge was entitled to notice of the claimed error and an opportunity to correct it.[20] Accordingly,

---

19. See *O'Day v. Webb*, 29 Ohio St.2d at 219, 58 O.O.2d 424, 280 N.E.2d 896.

20. See Sunderland, Improvement of Appellate Procedure (1940), 26 Iowa L.Rev. 3.

except for plain error and subject-matter jurisdiction, errors cannot be raised for the first time on appeal.

{¶ 46} Civ.R. 51(A) has no application to this case. As an appellee, McCarthy does not assign error. The issue in this appeal is whether the trial court abused its discretion in granting a new trial—not whether objections to the jury instructions were preserved for appellate review.

{¶ 47} I would affirm the judgment of the trial court in the appeals numbered C–090691 and C–090700.