[Cite as *Meadows v. Air Craft Wheels, L.L.C.*, 2012-Ohio-269.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 96782**

---

## JASON MEADOWS, ET AL.

PLAINTIFFS-APPELLANTS

vs.

## AIR CRAFT WHEELS, LLC, ET AL.

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-721595

**BEFORE:** S. Gallagher, J., Celebrezze, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** January 26, 2012

**ATTORNEYS FOR APPELLANTS**

Charles V. Longo
Matthew D. Greenwell
Charles V. Longo Co., LPA
25550 Chagrin Blvd.
Suite 320
Beachwood, OH   44122


**ATTORNEYS FOR APPELLEES**

**For Air Craft Wheels, LLC, et al.**

Marc W. Groedel
Martin T. Galvin
Brian T. Gannon
Reminger Co., LPA
1400 Midland Building
101 Prospect Avenue, West
Cleveland, OH   44115

**For Parker Hannifin Corporation**

Eric S. Daniel
John R. Mitchell
Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, OH   44114

Scott A. King
Thompson Hine LLP
Austin Landing I
10050 Innovation Drive, Suite 400
Dayton, OH   45342

SEAN C. GALLAGHER, J.:

{¶ 1}  Appellants, Jason Meadows ("Meadows") and Laurie Meadows, appeal the rulings of the Cuyahoga County Court of Common Pleas that (1) granted summary judgment in favor of appellee Air Craft Wheels, LLC ("ACW"), and (2) granted summary judgment in favor of appellee Parker Hannifin Corporation ("Parker").  For the reasons stated herein, we affirm.

{¶ 2}  We adopt the following underlying facts, as set forth by the trial court:

Most of the facts surrounding Meadows's claim are undisputed. ACW is a magnesium and aluminum sand casting foundry.  ACW purchased the foundry in 2004 from Parker Hannifin (Parker).  At the time ACW took ownership of the foundry, many of Parker's former workers accepted jobs with ACW and continued to work in the foundry.  ACW maintained many of Parker's policies, with only minor changes in the melting process and no changes to the procedure for charging the magnesium pot.  *Meadows Depo.*, p. 109.

Jason Meadows worked in the magnesium foundry under Parker from October 1998 until August 2002.  *Meadows Depo.*, p. 33, 98-99. During that time, he performed a variety of jobs, including furnace operator. *Meadows Depo.*, p. 33, 52.  From August 2000 until August 2002, Meadows permanently worked as a furnace operator.  *Meadows Depo.*, p. 51-52.

In June 2004, Meadows returned to work as a furnace operator at the foundry after it was purchased by ACW.  He worked there until November 2004, when he was called to active duty in the Marine Corps.  He returned to the foundry in January 2006, following his service.  At that time, he was designated as a "floater," and performed a variety of jobs.

Both parties agree that ACW did not train Meadows as a furnace operator.  The parties disagree as to whether Meadows was formally trained as a furnace operator by Parker.  Robert Hardman and Leon Krupp, two employees of Parker, testify that Meadows was trained to preheat the magnesium ingots by placing them on top of the furnace before inserting them into the furnace.  See *Robert Hardman Depo.*, p. 22, 29; *Leon Krupp*

*Depo.*, p. 50-51. Meadows acknowledges that he received on-the-job training, but testifies that he was never instructed to preheat the ingots before melting them. *Meadows Depo.*, p. 89, 199, 259.

Motions for Summary Judgment require the Court to construe all evidence in favor of nonmoving party. Civ.R. 56(C). However, the totality of that evidence supports the Defendant's position. By his own admission, Plaintiff had safely inserted magnesium ingots into a furnace "thousands" of times prior to the accident, was aware of the dangers of heated magnesium, and knew to take precautions to ensure the magnesium ingots were dry before they were inserted into the furnace. *Meadows Depo.*, p. 174-175, 177-178, 223-224. There is no genuine issue of material fact as to Meadows's experience as a furnace operator and knowledge of the dangers associated with melting magnesium.

On the morning of August 1, 2006, Meadows was assigned to the melt deck. *Meadows Depo.*, p. 126. There, he was responsible for inserting magnesium ingots into the furnace, melting and pouring the magnesium into molds. *Meadows Depo.*, p. 131-132. Meadows placed two ingots into the furnace, which then exploded suddenly and without warning. *Meadows Depo.*, p. 131-132, 177-178. It is undisputed that the explosion was due to moisture on the magnesium ingots at the time Meadows placed them into the furnace. Meadows was not wearing a face mask or protective equipment at the time. Molten magnesium exploded onto his face and body, causing severe second and third degree burns, and leaving him partially blind and totally disabled.

Plaintiffs set forth several claims in their original complaint, but they have abandoned all theories of ACW's liability except for Count 1, which alleges that ACW "deliberately misrepresented a toxic or hazardous substance," actionable pursuant to R.C. 2745.01(C).

{¶ 3} Appellants filed a complaint against ACW, Parker, and Airgas Safety, Inc.[1] The complaint included claims against ACW for employer intentional tort, negligence, and negligent storage. The complaint stated claims against Parker for joint enterprise

---

[1] Appellants represent that they settled their claims against Airgas.

liability and negligent design, engineering, and manufacture.   A loss of consortium claim was also set forth.

{¶ 4}   Parker filed a motion for summary judgment, claiming that "(1) Parker and ACW did not act with deliberate intent to cause Meadows' injuries; (2) Parker neither owed nor breached any duty of care that caused those injuries; and (3) any alleged tortious conduct by ACW cannot be imputed to Parker."   The trial court granted Parker's motion without opinion on October 13, 2010.

{¶ 5}   ACW filed a motion for summary judgment claiming that "(1) [ACW] did not deliberately intend to injure [Meadows]; (2) plaintiffs' negligence claims are barred by the Ohio Workers' Compensation Act; (3) plaintiffs' joint enterprise claim fails as a matter of law; and (4) R.C. 2745.01 is constitutional."   The trial court issued a detailed opinion granting ACW's motion on April 13, 2011.

{¶ 6}   Appellants timely filed this appeal, challenging the summary judgment rulings of the trial court.   Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56.   *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.   Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.   *Hollins v. Shaffer*, 182 Ohio App.3d 282, 2009-Ohio-2136, 912 N.E.2d 637, ¶ 12 (8th Dist).   Under Civ.R. 56(C), summary judgment is proper when all relevant materials to be considered under the rule reveal that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The evidence must be construed most strongly in the nonmoving party's favor and "summary judgment shall not be rendered" unless those materials establish that "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made * * *." *Id.*

{¶ 7} Appellants' first assignment of error provides as follows: "I. The trial court erred when it granted appellee [ACW's] motion for summary judgment because appellants presented sufficient evidence demonstrating that ACW committed an employer intentional tort under R.C. 2745.01."

{¶ 8} Under Ohio law, employees are generally limited to the remedy provided under the Workers' Compensation Act for injuries sustained in the workplace. R.C. 4123.74. A limited exception exists under R.C. 2745.01, which permits an employee to recover for an employer intentional tort as follows:

> (A) In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.
>
> (B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.
>
> (C) Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.

(D) This section does not apply to claims arising during the course of employment involving discrimination, civil rights, retaliation, harassment in violation of Chapter 4112. of the Revised Code, intentional infliction of emotional distress not compensable under Chapters 4121. and 4123. of the Revised Code, contract, promissory estoppel, or defamation.

**{¶ 9}** The above statute requires an employee to prove that his employer committed a tortious act with intent to injure another or with belief that the injury was substantially certain to occur, but with "substantially certain" statutorily defined as acting with deliberate intent to cause an employee to suffer injury. *Holloway v. Area Temps*, 8th Dist. No. 93842, 2010-Ohio-2106, 2010 WL 1919939, ¶ 13. "'Deliberate' means: 'characterized by or resulting from careful and thorough consideration — a deliberate decision.' Merriam-Webster's Collegiate Dictionary (10 Ed.1996) 305." *Forwerck v. Principle Business Ents., Inc.*, 6th Dist. No. WD-10-040, 2011-Ohio-489, 2011 WL 346431, ¶ 21.

**{¶ 10}** The Ohio Supreme Court confirmed the constitutional validity of the current version of the statute in *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, and *Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092. In *Kaminski*, the court recognized that while the statute does not eliminate the common-law cause of action for an employer intentional tort, it constrains such an action. *Id.* at ¶ 56-57, 98. As the court explained, "the General Assembly's intent in enacting R.C. 2745.01, as expressed particularly in 2745.01(B), is to permit recovery for employer intentional torts only when an employer acts with specific intent to cause an injury, subject to subsections (C) and

(D)." *Id.* at ¶ 56. Initially, appellants have not shown that they are entitled to a presumption of intent under R.C. 2745.01(C). There is an absence of evidence showing a deliberate removal of any equipment safety guard. Indeed, there is no evidence that a safety guard was ever removed from the machinery involved in the explosion. Further, Meadows acknowledged in his deposition that safety equipment, including safety jackets and face masks, was available. He chose not to wear the personal protective equipment provided. As he stated in his deposition, "Been working there for so many years, didn't see the reason to wear it." Therefore, the evidence fails to reflect that ACW deliberately removed any safety equipment.

{¶ 11} Further, there is no evidence showing a deliberate misrepresentation of a toxic or hazardous substance. While appellants would have us read the hazardous-substance provision to include a deliberate misrepresentation of the safety of procedures for handling, storing, and melting magnesium, we are unpersuaded by their argument. Such an interpretation is not consistent with the plain language of R.C. 2745.01(C). Case law suggests there needs to be a misrepresentation as to the nature or degree of the dangers posed by the hazardous substance itself. *See Sanfrey v. USM Corp.*, 12th Dist. No. CA90-02-003, 1990 WL 208869 (Dec. 17, 1990), *rev'd on other grounds*, 61 Ohio St.3d 718, 576 N.E.2d 789 (1991); *Hamlin v. Snow Metal Prods.,* 15 Ohio St.3d 90, 472 N.E.2d 1046 (1984). This is not tantamount to a misrepresentation concerning the safety of procedures for handling a hazardous substance whose dangers are known.

**{¶ 12}** In this case, there is no evidence that ACW concealed or misrepresented the dangers inherent in melting magnesium. The record reflects that all parties were aware that molten magnesium is a dangerous substance. Meadows was an experienced furnace operator and his deposition testimony reflects he was aware that placing wet or nonheated magnesium into the furnace could cause a dangerous reaction. There is no evidence that ACW represented otherwise. Any failures by ACW to implement and follow mandated safety procedures, or representations as to the safety of the processes and procedures used, did not amount to a deliberate misrepresentation of a hazardous substance. In the absence of evidence supporting a presumption of intent under R.C. 2745.01(C), appellants must point to some evidence of an actual or deliberate intent to cause an employee to suffer injury.

**{¶ 13}** In *Kaminski*, the court expressed as follows:

> R.C. 2745.01 by no means places Ohio outside the national mainstream relative to employer intentional torts and the exclusivity of the workers' compensation remedy. Rather, R.C. 2745.01 appears to harmonize the law of this state with the law that governs a clear majority of jurisdictions. "The common-law liability of the employer cannot, under the almost unanimous rule, be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury. (Footnote omitted.) 6 Larson's Workers' Compensation Law (2008), Section 103.03. *Kaminski,* 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, at ¶ 100.

**{¶ 14}** The statute means what it says, and requires an actual or deliberate intention to injure the employee. As noted in *Kaminski*,

[Professor Larson's treatise] reasons that "[e]ven if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering employees to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, wilfully violating a safety statute, failing to protect employees from crime, refusing to respond to an employee's medical needs and restrictions, or withholding information about worksite hazards, the conduct still falls short of actual intention to injure that robs the injury of accidental character." (Footnotes omitted.) *Id.* at Section 103.03. *Kaminski* at ¶ 100, fn. 16.

{¶ 15} Both parties refer to this court's previous decision in *Houdek v. ThyssenKrupp Materials N.A., Inc.*, 8th Dist. No. 95399, 2011-Ohio-1694, 2011 WL 1326374, *appeal not allowed*, 129 Ohio St.3d 1504, 2011-Ohio-5358, 955 N.E.2d 386, *reconsideration granted*, 130 Ohio St.3d 1500, 2011-Ohio-6556, 958 N.E.2d 961.[2] In that case, the employer had given specific directives that placed the employee in harm's way despite being specifically warned of the dangers involved just prior to the injury occurring. *Id.* The court found genuine issues of material fact existed as to whether an employer objectively believed injury to an employee was substantially certain to occur. *Id.* at ¶ 46. The panel distinguished *Kaminski*, where there was a stark absence of employer directives. *Id.* at ¶ 29.

{¶ 16} Unlike *Houdek*, in this case, there is no evidence that the employer's direct orders placed Meadows in harm's way. There was evidence showing that ACW had been cited for safety violations, failed to require its employees to utilize certain mandated safety equipment, did not maintain written safety policies, and did not adhere to industry

---

[2] Upon reconsideration, the Ohio Supreme Court accepted an appeal from this court's decision.

standards in handling molten magnesium. However, the evidence falls short of showing a conscious and deliberate intent to cause Meadows's injuries.

{¶ 17} Appellants argue that deliberate intent is evinced by ACW's deliberate choice not to inform or warn its employees of the extreme dangers associated with the hazardous substance, together with its failure to require its employees to properly preheat the ingots to remove moisture and its failure to require the use of face shields. Though appellants phrase ACW's knowledge and inaction as being conscious and deliberate, the evidence does not reflect ACW committed a tortious act with the specific intent to cause an employee injury.

{¶ 18} Even when an employer is aware of a dangerous condition and fails to take action to correct the situation, such conduct does not meet the statutory requirements without evidence of an actual intent to cause injury. *See Hubble v. Haviland Plastic Prods. Co.*, 3d Dist. No. 11-10-07, 2010-Ohio-6379, 2010 WL 5541117, ¶ 9. Also, the failure to provide protective equipment and the failure to adequately train and supervise do not rise to the level of a deliberate intent to cause injury. *See McCarthy v. Sterling Chems., Inc.*, 193 Ohio App.3d 164, 2011-Ohio-887, 951 N.E.2d 441, ¶ 14 (1st Dist.); *Fickle v. Conversion Technologies Internatl., Inc.*, 6th Dist. No. WM-10-016, 2011-Ohio-2960, 2011 WL 2436750, ¶ 48. Further, alleged deficiencies in training, safety procedures, safety equipment, instructions, or warnings, have been found to show recklessness, but are insufficient to create a genuine issue of material fact as to deliberate

intent. *See Roberts v. RMB Ents., Inc.*, 12th Dist. No. CA2011-03-060, 2011-Ohio-6223, 2011 WL 6017958.

{¶ 19} Here, ACW's conduct in failing to implement and/or enforce mandated procedures in working with molten magnesium, despite the known dangers associated therewith, was clearly reprehensible. There is no doubt that Meadows's accident was a tragic incident that could have been prevented. However, we cannot ignore the restraints placed on employer intentional tort law. Barring a showing of a rebuttable presumption under R.C. 2745.01(C), a claim necessarily fails in the absence of evidence of a specific intent to injure. While the evidence reflects ACW's conduct amounted to a reckless disregard for the safety of its employees, its conduct did not rise to the level of an employer intentional tort. Construing all materials in a light most favorable to appellants, the only conclusion that can be reached on this record under R.C. 2745.01 is that there is no genuine issue as to any material fact. Appellants' first assignment of error is overruled.

{¶ 20} Appellants' second assignment of error provides as follows: "The trial court erred when it granted appellee [Parker's] motion for summary judgment because [appellants] presented sufficient evidence establishing Parker's direct liability and/or vicarious liability as a joint venturer."

{¶ 21} Meadows was employed by Parker until 2002. Subsequent to the 2004 transfer of the foundry, he was hired by ACW. His injuries were sustained in 2006. Thus, at the time of the incident, he was an employee of ACW.

**{¶ 22}** Nonetheless, appellants argue Parker's active participation in the day-to-day operations of the foundry supports its claims of direct negligence and joint venture liability. We find no merit to appellants' argument.

> A joint business adventure, compositively defined, is an association of persons with intent, by way of contract, express or implied, to engage in the carry out [sic] a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, without creating a partnership, and agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers, with an equal right of control of the means employed to carry out the common purpose of the adventure. *Ford v. McCue*, 163 Ohio St. 498, 504, 127 N.E.2d 209 (1955).

Where a joint business venture exists, each party is liable for the tortious acts of the other committed within the scope of the joint venture. *Clifton v. Van Dresser Corp.*, 73 Ohio App.3d 202, 211, 596 N.E.2d 1075 (6th Dist.1991), citing *Vrabel v. Acri*, 156 Ohio St. 467, 472, 103 N.E.2d 564 (1952).

**{¶ 23}** We have already found that the evidence in this case fails to support appellants' employer intentional tort claim. Thus, Parker cannot be held liable under a joint venture theory. Additionally, the evidence herein fails to support a finding that ACW and Parker were engaged in a joint venture.

**{¶ 24}** A number of contracts arose from the sale of the foundry to ACW, including an asset purchase agreement, a lease agreement, and a network procurement agreement. The asset purchase agreement ("APA") specifically negated a joint venture, providing as follows:

Buyer [ACW] and Seller [Parker] are independent contracting parties. Neither party will, in any manner, represent that it or its employees or agents are employees or agents of the other. Nothing in this Agreement will be construed as authorizing either party to create or assume any obligation or liability in the name of the other or subject the other to any obligation or liability. This Agreement *will not constitute, create, give effect to or otherwise imply a joint venture*, polling arrangement, partnership or formal business organization of any kind, other than a supplier-purchaser relationship pursuant to the provision of the Supply Agreement during the term thereof. (Emphasis added.)

{¶ 25} Insofar as appellants claim Parker was in breach of the APA because it was not in compliance with applicable law and regulations when it transferred the foundry, Parker owed no duty to Meadows under this agreement. The record fails to support a finding that Meadows, who was not employed by either company at the time the APA was executed, was an intended third-party beneficiary of the contract. Further, the record fails to establish any breach of the APA or deficiencies in Parker's processes or training was a proximate cause of Meadows's injuries.

{¶ 26} The lease agreement provided for the lease of the property upon which the foundry was located pending the transfer of title to the property. Parker provided ACW with a limited warranty deed on July 29, 2005, though the deed was not recorded until June 15, 2007.

{¶ 27} The network procurement agreement established an "on-going relationship" for ACW's supply of certain goods and/or services to Parker. While the agreement was intended to improve competitiveness and to create cost savings and benefits to both parties, there was no agreement to share the profits from the foundry or an agreement to share losses. There must be "[a]n agreement for a division of the profits between the

parties * * *.  There must also be a sharing of losses * * *."  *Ford*, 163 Ohio St. at 503, 127 N.E.2d 209.  Further, insofar as the agreement required ACW to comply with Parker's specifications and required notification and approval for process changes, it did not establish joint control over the enterprise.  Parker did not have an equal right to direct and govern the operations, policies, or employees of ACW.

{¶ 28} The evidence reflects that Parker and ACW established an ongoing, beneficial relationship.  Parker assisted in training ACW employees, performed maintenance work for ACW, handled shipments of magnesium for ACW, shared waste disposal services, paid an experienced employee a bonus for staying on with ACW, and derived certain joint benefits from the network procurement agreement.  However, the arrangement did not amount to a joint venture.  Simply stated, "[t]he contract and operations under it in the instant case do not meet the tests of the relationship of joint adventure, and substantial evidence of the essential elements of joint adventure is necessary for the submission of the issue of the existence of that relationship to the jury." *Ford*, 163 Ohio St. at 505, 127 N.E.2d 209.

{¶ 29} Appellants also argue that apart from joint venture liability, the evidence supports its claims of direct negligence against Parker.  There was evidence showing that following the transfer of the foundry to ACW, Parker was involved in training ACW furnace operators on melting and pouring magnesium.  However, they point to no evidence showing that Parker trained Meadows while he was employed at ACW and they fail to show how any former training extended a duty beyond the employment

relationship. Further, appellants fail to show how Parker's training of employees, maintenance and equipment repairs, handling and storage of magnesium ingots, or any other pre- or post- sale conduct was a proximate cause of Meadows's injuries. They also fail to point to any law supporting its assertion of a negligent design claim against Parker in the context asserted herein.

{¶ 30} Meadows testified that he was aware that water and magnesium do not mix very well and that it is a bad idea to place cold items into molten metal. He had been injured in the past by his failure to take steps to preheat objects being placed in molten metal. He testified to setting pieces aside and to a process of removing moisture before placing ingots into the furnace. He testified to differences in the operation processes implemented by ACW in working with metals from those that were used when Parker owned the foundry. There were also changes made to the types of personal protective equipment available to employees at ACW. While Meadows was wearing some protective equipment at the time of the accident, he was not wearing the full complement of personal protective equipment that was made available, including a protective face mask.

{¶ 31} Because the evidence fails to support a finding of breach of duty or proximate cause, appellants' direct claims of negligence fail as a matter of law. Accordingly, we find the trial court did not err in granting Parker's motion for summary judgment. Appellants' second assignment of error is overruled.

Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, P.J., and
EILEEN A. GALLAGHER, J., CONCUR